# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTOINE JOSEPH METCALF,<br>a/k/a Tony Metcalf,<br><br>Defendant. | 3:19-CR-30105-RAL<br><br>REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS |

Tribal officers searched Antoine (Tony) Metcalf's house and collected evidence within it under the authority of two judge-issued warrants. After being indicted on a drug conspiracy charge, Metcalf moved to suppress all evidence seized and derived from the searches on Fourth Amendment grounds. Because federal law does not require excluding this evidence, the Court recommends that the suppression motion be denied.

## BACKGROUND

While in tribal custody, Clinton "Fuddy" Haukaas requested to speak with Rosebud Sioux Tribe Special Agent Ben Estes. Estes went and talked to Haukaas at the jail on January 8, 2016. During the interview, Haukaas revealed that Metcalf was distributing methamphetamine at Metcalf's mother's residence in the old Two Strike community on the Rosebud Indian Reservation. He described the color and location of

the home. Haukaas said he purchased a half gram of methamphetamine from Metcalf two days earlier, just outside the house, for $50. Haukaas admitted to ingesting that methamphetamine and a urine sample presumptively confirmed that he still had methamphetamine and THC in his system.

Three days later, on January 11, Agent Estes applied for a warrant to search Metcalf's residence and person. In his supporting affidavit, Estes recited what Haukaas had divulged. Estes also spelled out his opinions and beliefs, based on his training and experience as a law enforcement officer and drug investigator, and included with the affidavit maps to Metcalf's house. A tribal judge determined that there was probable cause to search Metcalf and his home for evidence of drug possession and distribution offenses under the Rosebud Sioux Tribal Code and issued the warrant.

On January 15, tribal officers went to Metcalf's residence and executed the search warrant. Shaun Espino, Elizabeth Janis, and two juveniles were inside the home, Metcalf was not. Officers found and seized from the kitchen, living room, and a bedroom, 73.55 grams of methamphetamine in a backpack, drug paraphernalia, including pipes, a scale, and other items testing positive for methamphetamine, $6,478 in cash, two firearms, and ten electronic devices, six of which were cell phones.

When interviewed, Janis mentioned that she and Espino had just moved into the residence a week before the search and Metcalf had moved out. Janis confirmed Espino had been selling large quantities of drugs and that she had wired money for him. Janis identified which cell phones were hers and Espino's.

On May 25, 2016, Agent Estes applied for a federal search warrant for the electronic devices seized during the search of Metcalf's house. Estes's affidavit contained the information from Haukaas, descriptions and pictures of the devices seized from the residence, a summary of what Janis had told him, information gleaned from financial records, and intelligence relating to Espino's drug transactions. Estes stated in the affidavit that he believed the devices belonged to Espino or Janis. A magistrate judge issued a search warrant based on the affidavit.

Ultimately, a federal grand jury indicted Metcalf for conspiring to distribute 500 grams or more of a methamphetamine mixed substance. Metcalf then moved to suppress at trial the evidence obtained from the searches of his residence and the devices seized from it. The Court held an evidentiary hearing on the motion, received two exhibits into evidence (the two warrants and supporting documents[1]) and heard testimony from Agent Estes.[2]

## DISCUSSION

### A. Probable Cause

Metcalf claims that the warrant-based search of his residence, on January 15, was invalid because the supporting affidavit did not provide probable cause to believe that evidence of a crime would be found in the home. He argues that the information

---

[1] *See* Mot. Hrg. Exs. 1, 2 (Dec. 17, 2020).

[2] *See* Mot. Hrg. Tr. 7-48 (Dec. 17, 2020).

Haukaas provided, and used to obtain the tribal search warrant, was not reliable and sufficiently corroborated.

Before a search warrant may be issued, the Fourth Amendment requires a showing of probable cause.[3] "Probable cause" to search exists "if there is a fair probability that contraband or evidence of a crime will be found in a particular place."[4] In determining whether probable cause exists, the court must look at the totality of the circumstances.[5] This determination is to be "based upon a common-sense reading of the entire affidavit"[6] and any "reasonable inferences" drawn from it.[7] The affidavit should not be read in a hyper-technical manner[8] and the probable cause shown in it "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."[9]

When a judge relies solely on an affidavit to issue the warrant "'only that information which is found within the four corners of the affidavit may be considered

---

[3] *See United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007).

[4] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[5] *See id.* at 230, 234.

[6] *United States v. Davis*, 867 F.3d 1021, 1027 (8th Cir. 2017).

[7] *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (*per curiam*).

[8] *See United States v. Ventresca*, 380 U.S. 102, 109 (1965).

[9] *Gates*, 462 U.S. at 232 (*quoting United States v. Cortez*, 449 U.S. 411, 418 (1981)).

in determining the existence of probable cause.'"[10] The affidavit must provide the issuing judge with a "substantial basis for . . . conclude[ing] that probable cause exist[s]."[11] "The sufficiency of a search warrant is in the first instance determined on the basis of the information before the issuing jud[ge]."[12] On a motion to suppress, a reviewing court should "not make a *de novo* determination of probable cause; rather, the decision to issue the warrant is to be upheld if supported by substantial evidence in the record."[13]

Probable cause may be found in hearsay statements from reliable persons;[14] those from confidential informants corroborated by independent investigation;[15] or in observations made by trained law enforcement officers.[16] While these are some of the ways probable cause is commonly established, they are by no means all-inclusive.

---

[10]*United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (*quoting United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999)); *see also Whiteley v. Wyo. State Penitentiary*, 401 U.S. 560, 565, n. 8 (1971) ("[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing [judge]. The contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless.")

[11]*Gates*, 462 U.S. at 238, 239 (*quoting Jones v. United States*, 362 U.S. 257, 271 (1960)).

[12]*United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986) (citations omitted).

[13]*Id. (citing Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (*per curiam*)).

[14]*See Gates*, 462 U.S. at 245.

[15]*See Draper v. United States*, 358 U.S. 307, 313 (1959).

[16]*See McDonald v. United States*, 335 U.S. 451, 454 (1948).

Information in applications and affidavits for search warrants must be examined under a totality-of-the-circumstances approach.[17] "[G]reat deference" is given to the issuing judge's determination whether the warrant affidavit establishes probable cause.[18]

If an "affidavit is based on information from an informant, then the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search."[19] Although important to determining the value of an informant's report, these elements are not entirely separate and independent requirements that should be "rigidly exacted in every case."[20] Informants' tips come in many shapes and sizes from many different people and, like other clues and evidence, may vary greatly in their value and reliability.[21] If some information from an informant is shown to be reliable because of corroboration, then it is a permissible inference that other, uncorroborated information, is also reliable.[22]

An informant's reliability, veracity, and knowledge base are applicable "considerations in the totality-of-the-circumstances analysis that traditionally has

---

[17]*See Gates*, 462 U.S. at 230.

[18]*United States v. Leon*, 468 U.S. 897, 914 (1984).

[19]*Solomon*, 432 F.3d at 827 (*citing United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1986)).

[20]*Gates*, 462 U.S. at 230.

[21]*See id.* at 232.

[22]*See LaMorie*, 100 F.3d at 553 (*citing United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir. 1995))

guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."[23] Such an analysis is a flexible one "so that, for example, an informant's clear basis of knowledge could be balanced against, rather than automatically overruled by, that informant's lack of a 'track record' of reliability."[24]

The task of the issuing judge "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found [in the premises sought to be searched]."[25] And the duty of the reviewing court is to ensure that the judge who issued the search warrant had a substantial basis for determining the existence of probable cause.[26]

The situation here involves an officer affiant (Agent Estes) and a judge relying primarily on the "basis of knowledge" and the detailed information of a named informant (Haukaas). Estes believed that evidence of drug-related crimes would be found at Metcalf's residence based on what Haukaas had revealed. Estes though

---

[23]*Gates*, 462 U.S. at 233 (citations omitted).

[24]*Reivich*, 793 F.2d at 959 (*citing Gates*, 462 U.S. at 233-35).

[25]*Gates*, 462 U.S. at 238.

[26]*See id*. at 238-39.

neither expressed his opinion as to Haukaas's reliability nor set forth much, in the way of facts, to corroborate Haukaas's revelations. It is unknown if the tribal judge, who issued the search warrant, asked for additional information from the named informant; or inquired about the informant's reliability or whether any of the information from the informant had been corroborated. Had such information been known and considered, it would have strengthened the judge's probable cause determination.

To be sure, "[a] person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his role in comparison with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation."[27] But when the arrested informant's statements include an admission "to criminal activities beyond those of which the police already kn[o]w [the] [person] to be guilty [of,]" the statements "cannot be taken as blame shifting."[28]

If an informant's information amounts to an admission that the informant has committed a crime, then that admission carries its own indicia of reliability. Indeed, people do not generally admit to criminal conduct and place critical evidence in the hands of police. For this reason, admissions of crime, like those against proprietary interest, are entitled to credit and may be used to support a finding of probable cause

---

[27]*Williamson v. United States*, 512 U.S. 594, 607-08 (1994).

[28]*United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001); *see also Reivich*, 793 F.2d 957, 960 (recognizing that "a person admitting crime risks disfavor with the prosecution if he lies to the police").

8

for a residential search.[29]  "That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct."[30] Admissions to involvement in recent and confirmed illicit activity enhance, rather than deflate, an informant's credibility and the reliability of the information he furnishes.

Haukaas was a first-hand eyewitness to Metcalf's drug dealings.  Haukaas bought methamphetamine from Metcalf, smoked it, and tested positive for the drug two days later.  "An informant who alleges he is an 'eyewitness' to an actual crime perpetrated demonstrates sufficient 'reliability' of the person."[31]  The informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitled his tip to greater weight than might otherwise be the case."[32]  The inclusion of more corroborating evidence and of Agent Estes's belief that Haukaas was a reliable informant would have made the affidavit stronger.  The best practice would have been for Estes to put such information in his

---

[29]*See United States v. Harris*, 403 U.S. 573, 583 (1971); *see also United States v. Pennington*, 287 F.3d 739, 742 (8th Cir. 2002) (the fact that informant implicated himself in criminal activity to the police supports a probable cause finding to search).

[30]*Harris*, 403 U.S. at 583-84.

[31]*McCreary v. Sigler*, 406 F.2d 1264, 1269 (8th Cir. 1969) (probable cause found even under the older, stricter *Aguilar-Spinelli* test).

[32]*Gates*, 462 U.S. at 234; *see also United States v. Leppert*, 408 F.3d 1039, 1042 (8th Cir. 2005) (citations omitted) ("[W]e think that [the informant]'s statement that he helped to make the methamphetamine 'carr[ies] considerable weight' in supporting a finding of probable cause to search the location where he admitted to committing that crime.").

9

affidavit. The totality of the circumstances inquiry, however, does not require that such factors be checked in every case.

Several circuits have held that statements from unproven informants "are so presumptively reliable that they may support a probable cause determination even if uncorroborated."[33] One circuit declared "it would be contradictory to allow a defendant to be convicted based on the uncorroborated testimony of his co-perpetrator while refusing to find that the same statement would be sufficient to support probable cause."[34]

In an often-cited Eighth Circuit case, two separate unproven informants identified the defendant as their source of supply. In attacking the issuing judge's probable cause finding, the defendant argued that there were not sufficient indicia of probable cause. The appeals court observed that such an argument represented an "'excessively technical dissection of informants' tips' and the 'judging [of] bits and pieces of information in isolation against *** artificial standards'" which the Supreme Court cautioned against.[35] The court then affirmed the issuing judge's probable cause determination. "The police knew of the presence of drug traffic," the court said, "because they had found cocaine on [the two informants], and [both of them] had first-

---

[33]*United States v. Brown*, 366 F.3d 456, 459-60 (7th Cir. 2004) (collecting cases).

[34]*United States v. Patterson*, 150 F.3d 382, 386 (4th Cir. 1998).

[35]*Reivich*, 793 F.2d at 960.

10

hand knowledge of the identity of their own drug source and a tenuous incentive to lie since giving false information could have furthered their trouble with the police."[36] The court pointed out that "[t]hese circumstances were set out in the affidavit with sufficient particularity that the judicial officer's decision to issue the warrant constituted an exercise of independent judgment and was not just a rubber-stamping of conclusory police statements."[37] The court acknowledged that the two informants "might not have qualified for a AAA rating on a Dun & Bradstreet credibility scale, not having been shown to be Certified Public Informants, their motivation to speak the truth (it being a reasonably safe assumption that self-preservation ranks higher than honor in a drug dealer's hierarchy of values) and their information concerning [the defendant] were sufficient to support a finding of probable cause."[38]

The overarching question from this and other like cases is whether there was at least a "fair probability" that items relating to the possession and distribution of controlled substances would be found within Metcalf's residence.

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

The Court concludes that probable cause existed to search the residence based on:

1. The admissions Haukaas made against interest (i.e., buying and using methamphetamine) and his positive UA test result for methamphetamine and THC.

2. Haukaas's admissions went beyond the forbidden activities law enforcement uncovered or knew about.

3. Haukaas made his admissions after being Mirandized, waiving his rights, and agreeing to speak with Agent Estes.

4. The fact that Haukaas sought out and informed Estes of the drug transaction he had with Metcalf two days earlier.

5. Haukaas was a known informant who provided a detailed report about when the transaction occurred (January 6), where it took place (outside Metcalf's house across from the Two Strike community), what and how much he bought (one-half gram of methamphetamine), and the amount he paid for the same ($50).

6. Haukaas identified Metcalf by name as the person who sold him the methamphetamine.

7. Estes met personally with Haukaas and could assess his credibility, whether he was impaired, and the basis of his knowledge (first-hand).

8. Estes corroborated the location of the house.

9. Estes also corroborated – through a drug test – Haukaas's story that he consumed methamphetamine the same day as he bought it from Metcalf (two days before meeting with Estes).

10. And Estes's extensive training, knowledge, and experience as a narcotics officer and in preparing search warrants for illegal controlled substances and his belief that there was evidence of criminal drug possession and distribution in Metcalf's home.

What's more, the timing of the transaction Haukaas reported was extremely recent, that being two days before Estes applied for, and secured, the search warrant for Metcalf's house.

Because the tribal judge had a "substantial basis" to conclude that probable cause existed to search the house for evidence of drug related crimes, Metcalf's suppression motion should be denied.[39]

**B.** *Leon* **and Good Faith Exception**

But even if the search warrant lacked probable cause and was invalid, the good-faith exception to the warrant requirement saves the evidence seized from the house from the jaws of the Exclusionary Rule. When a warrant is not supported by probable cause, a reviewing court must – before suppressing the evidence seized – consider whether it was "objectively reasonable" for officers carrying out the search to rely "in good faith . . . on the judge's determination that there was probable cause to issue the warrant."[40] The court must ask whether the warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[41]

---

[39]*See United States v. Ketzback*, 358 F.3d 987, 991-92 (8th Cir. 2004); *LaMorie*, 100 F.3d at 553-54; *Reivich*, 793 F.2d at 959-60; *see also United States v. Fredericks*, 273 F.Supp.2d 1032, 1040 (D.N.D. 2003) (probable cause found despite BIA officer's failure to attest to the reliability or track record of informant in search warrant affidavit).

[40]*United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008).

[41]*Leon*, 468 U.S. at 923 (*citing Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)).

13

This good-faith exception prevents introduction of evidence confiscated under a search warrant that is issued based on a "bare bones" affidavit.[42] The standard by which the warrant affidavit should be judged, for purposes of the exception, is less demanding than the substantial basis standard required to prove probable cause in the first instance.[43] And when assessing good faith under the exception, a court can look outside the four corners of the affidavit and "consider the totality of the circumstances, including any information known to the officer but not included in the affidavit."[44] It is rare for a warrant affidavit to be so facially lacking in probable cause as to make reliance on it "entirely unreasonable." This is not one of those rare cases.

From Agent Estes's perspective, the law was not so clearly established that he could reasonably predict the affidavit he prepared and submitted to the tribal judge lacked sufficient indicia of probable cause. Although the Eighth Circuit has not adopted a per se rule to the effect that probable cause to arrest a drug trafficker establishes an inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence, the court has found probable cause to exist when officers had stated that in their experience such an inference is appropriate and in

---

[42]*See Leon*, 468 U.S. at 915 & n. 13.

[43]*See and compare Leon*, 468 U.S. at 915, 923-25 *with Gates*, 462 U.S. at 238-39.

[44]*United States v. Johnson*, 848 F.3d 872, 879 (8th Cir. 2017) (*quoting United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007)).

which the supporting affidavit also described the defendant's drug trafficking activity.[45]

Other circuits have used language that comes much closer to a per se inference.[46]

Agent Estes had additional information, he did not include in his affidavit, that bolstered Haukaas's reliability. Despite testing presumptively positive for methamphetamine and THC, Haukaas did not appear to be under the influence of these drugs when he met with and talked to Estes on January 8. Estes was familiar with the house Haukaas described (recognizing it as Metcalf's mother's old place) and confirmed the location of the home by driving past, and up to, it and by pinpointing the residence on maps he attached to his affidavit. And while not actively investigating Metcalf, Estes knew Metcalf to be someone who was involved in drug activity on the Rosebud Reservation.

---

[45] *See United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007); *see also United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (drug manufacturing and distribution evidence recovered from defendant's car accident linked to his residence through the experienced opinion of the agent that drug manufacturers often keep contraband and proceeds at their personal residences); *United States v. Carpenter*, 341 F.3d 666, 671-72 (8th Cir. 2003) ("As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence. Given the common-sense appeal of this inference, and its acceptance by the issuing magistrate, it was not entirely unreasonable for [the officer] to believe the inference to be permissible."); *United States v. Luloff*, 15 F.3d 763, 768 (8th Cir. 1994) (affidavit included showing that defendant engaged in a course of drug trafficking and averment from the agent that based on his experience, drug traffickers often keep in their residences records, drug proceeds, and guns).

[46] *See Ross*, 487 F.3d at 1123 (collecting cases).

Even if it lacked the necessary detail to establish probable cause, the affidavit connected Metcalf's criminal conduct to his residence. An officer in Agent Estes's position could reasonably believe that the connection could justify a search for drug offense evidence (possession and distribution of methamphetamine) in the home.[47] The affidavit recounted the drug transaction that Haukaas and Metcalf consummated within the curtilage of the house. The locus of the transaction created a substantive connection between the dwelling place and the crimes Estes and his fellow officers were investigating.

In the final analysis, Estes's affidavit was not so vague, conclusory, or deficient that it made any official belief in the search warrant's existence objectively unreasonable. The information in the affidavit, coupled with the uncertain state of the law and the finding of the tribal judge who independently reviewed the affidavit, is enough to allow the warrant, and evidence under the authority of it, to stand.[48]

## C. Fruit of the Poisonous Tree

Metcalf also claims that the federal warrant, for the search of the electronic devices taken from his residence on January 15, was an extension of the tribal search

---

[47] *See United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).

[48] *See Ross*, 487 F.3d at 1123-24; *Carpenter*, 341 F.3d at 671-72; *United States v. Koons*, 300 F.3d 985, 991-92 (8th Cir. 2002); *see also United States v. Swopes*, No. 4:14 CR 244 CDP-1, 2014 WL 7205050 at **6-7 (W.D. Mo. Dec. 17, 2014) (sufficient indicia of probable cause where informant's statements offered the richness and detail of first-hand observation, were against penal interest, and were partially corroborated).

warrant. He says that the evidence garnered from these devices should be suppressed as the fruit of an unlawful search.

The government asserts that Metcalf does not personally have a legitimate expectation of privacy in the devices to challenge the search of them.[49] Whether he has standing to object to all ten of them is doubtful.[50] The Court, however, need not dwell on this question because even if standing exists (1) Agent Estes's affidavit, as written, provided probable cause for the issuance of a search warrant for Metcalf's house; and (2) the warrant was valid (or could objectively be relied on as such).[51] Since there was no "poisonous tree" for any "tainted fruit" to grow or fall from,[52] it follows that the extraction evidence, culled from the devices, is fully admissible against Metcalf at trial.

---

[49]*See Rawlings v. Kentucky*, 448 U.S. 98, 104-06 (1980); *Rakas v. Illinois*, 439 U.S. 128, 133-38 (1978); *see also United States v. Turner*, 781 F.3d 374, 392 (8th Cir. 2015) (to mount a successful motion to suppress, an accused must first establish that he personally has a legitimate expectation of privacy in the contents of the cell phones or electronic devices that were searched).

[50]*See* 6 Wayne R. LaFave, *Search and Seizure*, §11.3(f), n. 448 (6th ed. 2020) (collecting cases, including two from the Eighth Circuit).

[51]*See United States v. Farlee*, 757 F.3d 810, 818-20 (8th Cir. 2014); *Hudspeth*, 525 F.3d at 676.

[52]*See United States v. Bradshaw*, No. 3:17:CR-300101(02)-RAL, 2018 WL 4347924 at *8 (D.S.D. Sept. 6, 2018), *R & R adopted*, 2018 WL 4344999 (D.S.D. Sept. 11, 2018); *see also United States v. Brown*, CR. 12-30115-RAL, 2013 WL 943619 at *9 (D.S.D. March 11, 2013) (defendant's "fruit of the poisonous tree" argument fails because the search was supported by probable cause).

## CONCLUSION

The search conducted at Metcalf's residence and the seizure of evidence from it were based on probable cause or at least an objectively reasonable (good-faith) belief the warrant, that authorized them, was valid. A reasonable officer, in Agent Estes's position, would not have known that the search and seizure were illegal. The warrant the judge issued was not so lacking in indicia of probable cause that Estes could reasonably believe the search was invalid. Nor could Estes reasonably be expected to question the tribal judge's probable cause determination. Estes and his search team did not circumvent the Fourth Amendment or overstep their bounds in seizing drug-related evidence from the home.

And there is no reason to exclude the data acquired from the electronic devices as "tainted fruit." The initial tribal search warrant was valid and hence, so was the later issued warrant that authorized the mining of this data. The law, as applied to Metcalf's case, foils his ability to suppress the evidence seized from his house and the test results derived from it. The government thus may use this evidence, in its case against him, at trial.

## RECOMMENDATION

Accordingly, based on the authorities and legal analysis set forth in this report, and the record now before the Court, it is hereby

RECOMMENDED that Metcalf's Motion to Suppress[53] be denied in all respects.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[54] Unless an extension of time for cause is later obtained,[55] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[56] Objections must "identify[] those issues on which further review is desired[.]"[57]

Dated this 29th day of December, 2020, at Pierre, South Dakota.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[53]*See* Docket No. 54.

[54]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[55]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black,* 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[56]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[57]*Arn*, 474 U.S. at 155.