UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTOINE JOSEPH METCALF,<br>a/k/a Tony Metcalf,<br><br>Defendant. | 3:19-CR-30105-RAL<br><br><br>**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING MOTION TO SUPPRESS** |

A federal grand jury indicted Antoine Joseph Metcalf (Metcalf) for conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Doc. 1. Metcalf moved to suppress from use at trial evidence seized from a residence and data obtained from cellphones on the basis that such evidence was gathered in violation of the Fourth Amendment. Doc. 54. Magistrate Judge Mark A. Moreno held a suppression hearing during which he received two exhibits into evidence and heard testimony from Rosebud Sioux Tribe Special Agent Ben Estes. Docs. 64, 65. Thereafter, Judge Moreno issued a Report and Recommendation recommending that the motion to suppress be denied in its entirety. Doc. 70. Metcalf has filed an objection to that Report and Recommendation. Doc. 74. The United States has filed a response. Doc. 75.

This Court reviews a report and recommendation under 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

1

objection is made." However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). Having conducted a de novo review of those portions of the Report and Recommendation to which Metcalf objects, this Court adopts the Report and Recommendation.

I. **Facts Relevant to Objection to Report and Recommendation**

While in tribal custody on an unrelated charge, Clinton "Fuddy" Haukaas (Haukaas) requested to speak with Special Agent Ben Estes. Mot. Hr'g Tr. at 14. Special Agent Estes went and talked to Haukaas at the jail on January 8, 2016. Mot. Hr'g Tr. at 14–15. During the interview, Haukaas revealed that he had purchased a half gram of methamphetamine from Metcalf for $50 two days earlier, just outside Metcalf's residence in the Two Strike community. Mot. Hr'g Tr. at 16–17, 20. Haukaas described the color and location of the home. Mot. Hr'g Tr. at 16–17, 20. Special Agent Estes was familiar with the residence and was aware that Metcalf was involved in drug activity. Mot. Hr'g Tr. at 17, 29. Haukaas admitted to ingesting the methamphetamine he had purchased from Metcalf, and a urine sample presumptively confirmed that Haukaas still had methamphetamine and THC in his system. Mot. Hr'g Tr. at 18–19.

Three days later, on January 11, Special Agent Estes applied for a warrant to search Metcalf's residence and person. Ex. 1; Mot. Hr'g Tr. at 20–21. In his supporting affidavit, Special Agent Estes recited what Haukaas had divulged. Ex. 1; Mot. Hr'g Tr. at 21. Special Agent Estes also spelled out his opinions and beliefs, based on his training and experience as a law enforcement officer and drug investigator, and included with the affidavit directions and maps to Metcalf's house. Ex. 1; Mot. Hr'g Tr. at 21. A tribal judge determined that there was probable cause to search

Metcalf and his home for evidence of drug possession and distribution offenses under the Rosebud Sioux Tribal Code and issued the warrant. Mot. Hr'g Tr. at 21–22.

On January 15, tribal law enforcement officers went to Metcalf's residence and executed the search warrant. Mot. Hr'g Tr. at 22. Shaun Espino, Elizabeth Janis, and two juveniles were inside the home; Metcalf was not. Mot. Hr'g Tr. at 22–23. Officers found and seized from the kitchen, living room, and a bedroom, 73.55 grams of methamphetamine in a backpack, drug paraphernalia, including pipes, a scale, and other items testing positive for methamphetamine, $6,478 in cash, two firearms, and ten electronic devices, six of which were cell phones. Ex. 2; Mot. Hr'g Tr. at 23.

When interviewed, Janis said that she and Espino had just moved into the residence a week before the search and Metcalf had moved out. Mot. Hr'g Tr. at 23–24. Janis confirmed that Espino had been selling large quantities of drugs and that she had wired money for him. Mot. Hr'g Tr. at 24. Janis identified which cell phones were hers and Espino's. Mot. Hr'g Tr. at 24–25.

On May 25, 2016, Special Agent Estes applied for a federal search warrant for the electronic devices seized during the search of Metcalf's house. Ex. 2; Mot. Hr'g Tr. at 25–26. Special Agent Estes's affidavit contained the information from Haukaas, descriptions and pictures of the devices seized from the residence, a summary of what Janis had told him, information gleaned from financial records, and intelligence relating to Espino's drug transactions. Ex. 2; Mot. Hr'g Tr. at 26–27. Special Agent Estes stated in the affidavit that he believed the devices belonged to Espino or Janis. Ex. 2; Mot. Hr'g Tr. at 27. Judge Moreno issued a search warrant based on the affidavit, and data was obtained from the cellphones, including text messages between Espino and Metcalf. Mot. Hr'g Tr. at 27.

## II. Discussion

### A. Probable Cause

Metcalf objects to Judge Moreno's finding that the initial tribal search warrant was supported by probable cause. The Fourth Amendment requires that a search warrant only be issued upon probable cause. United States v. Williams, 477 F.3d 554, 557 (8th Cir. 2007). Probable cause exists if there is a "fair probability" that contraband or evidence of a crime will be found in the place to be searched. Illinois v. Gates, 462 U.S. 213, 238 (1983). Whether probable cause exists depends on the totality of circumstances. United States v. Reinholz, 245 F.3d 765, 776 (8th Cir. 2001) (quoting Gates, 462 U.S. at 230, 234). Courts must "remain mindful that probable cause is a practical, factual, and nontechnical concept, dealing with probabilities." Id. An issuing judge's determination of probable cause should be paid "great deference" by the reviewing court. United States v. Brackett, 846 F.3d 987, 992 (8th Cir. 2017) (citation omitted). This means that a reviewing court should not disturb an issuing judge's determination unless there is no substantial basis for concluding probable cause existed. United States v. Montgomery, 527 F.3d 682, 686 (8th Cir. 2000) (citation omitted).

If the issuing judge relies entirely on the supporting affidavit to issue the warrant, only that information which is found "within the four corners of the affidavit" may be considered in determining whether there is probable cause. United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (cleaned up and citation omitted). "The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit." United States v. Davis, 867 F.3d 1021, 1027 (8th Cir. 2017) (quoting United States v. Seidel, 677 F.3d 334, 338 (8th Cir. 2012) (per curiam)). When the affidavit is based on information from an informant, the informant's reliability, veracity, and the basis of knowledge are relevant factors in

determining whether the affidavit provided a substantial basis for the issuing judge to conclude there was probable cause. Gates, 462 U.S. at 238–39; Solomon, 432 F.3d at 827 (citation omitted). "[A] deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Gates, 462 U.S. at 233.

Here, Metcalf contends that that evidence seized in his residence should be suppressed because the search warrant was not supported by probable cause. Doc. 74 at 2–5. In particular, Metcalf argues that Haukaas lacked credibility and that the information he provided was not properly corroborated by law enforcement. First, Metcalf posits that Haukaas was not reliable because he was a known drug dealer, had no track record of providing reliable information, and was under the influence of drugs at the time he made his statement. However, Special Agent Estes met in person with Haukaas, and therefore, had an opportunity to observe his demeanor. Mot. Hr'g Tr. at 14–15. United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996) (noting that personal contact with an informant can strengthen an officer's decision to rely on the information provided). Special Agent Estes testified that Haukaas had ingested the drugs he purchased from Metcalf two days before. Mot. Hr'g Tr. at 18. While admitting that it was possible that Haukaas was still under the influence of those drugs, Special Agent Estes stated that Haukaas did not appear to be under the influence when he gave his statement. Mot. Hr'g Tr. at 15, 18–20.

Further, the information itself supports Haukaas's reliability. Significantly, Haukaas admitted to Special Agent Estes that he had purchased a half-gram of methamphetamine from Metcalf for $50 and smoked it. Mot. Hr'g Tr. at 16–18, 20. The United States Supreme Court and the Eighth Circuit have found that when an informant admits to a crime that law enforcement is

5

unaware of, such an admission bolsters his or her credibility.[1] Further, Haukaas was relaying first-hand knowledge. See McCreary v. Sigler, 406 F.2d 1264, 1269 (8th Cir. 1969) (finding that an informant who is an eyewitness to or has first-hand knowledge of criminal activity bolsters the informant's reliability).

Metcalf also argues that Haukaas's information was not sufficiently corroborated by law enforcement. Metcalf seems to suggest that law enforcement did not take any steps whatsoever to corroborate Haukaas's information. However, Special Agent Estes testified that he was familiar with Metcalf's residence, and Haukaas's description of the residence matched Special Agent Este's recollection. Mot. Hr'g Tr. at 16–17. Tyler, 238 F.3d at 1039 ("Even 'the corroboration of minor, innocent details can suffice to establish probable cause.'" (quoting United States v. Ramos, 818 F.2d 1392, 1397 n. 7 (8th Cir. 1987))). Special Agent Estes also stated on cross-examination that he had conducted surveillance of the residence after his conversation with Haukaas. Mot. Hr'g Tr. at 40. Such surveillance is demonstrated by the directions and maps Special Agent Estes attached to the supporting affidavit. Ex. 1.

---

[1] United States v. Harris, 403 U.S. 573, 583 (1971) ("People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search."); United States v. Leppert, 408 F.3d 1039, 1042 (8th Cir. 2005) (reiterating that an informant's statement against his or own interest is presumptively credible); United States v. Pennington, 287 F.3d 739, 742 (8th Cir. 2002) (recognizing that an informant implicating himself in criminal activity tends to support a finding of probable cause to search); United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001) (an informant's statements cannot be discredited as mere "blame-shifting" when the informant admitted to criminal activities beyond those of which the police already knew him to be guilty); LaMorie, 100 F.3d at 553 (noting that statements against the penal interest of an informant "naturally carry considerable weight"); United States v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986) ("[A] person admitting a crime risks disfavor with the prosecution if he lies to the police.").

Finally, Metcalf argues that the warrant was not supported by probable cause because Haukaas's information related to a sale *outside* the residence whereas the search warrant related to evidence *inside* the residence. But as Special Agent Estes testified, in his training and experience, it is common for those who sell narcotics to store narcotics at their residence. Mot. Hr'g Tr. at 12, 48. See United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000) (noting that both issuing judges and affiant officers "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists"); see also United States v. Wiley, 475 F.3d 908, 916 (7th Cir. 2007) ("[P]robable cause does not require direct evidence linking a crime to a particular place. Instead, issuing judges are entitled to draw reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense. In the case of drug dealers, evidence is often found at their residences" (citation omitted)); United States v. Nolan, 199 F.3d 1180, 1183 (10th Cir. 1999) (collecting cases in which sister circuits have held that illegal activity outside the home can provide probable cause for issuance of a search warrant for a suspect's home). In sum, the information in the affidavit provided a substantial basis for the tribal judge to conclude there was probable cause.

### B. Leon Good Faith Exception

Metcalf also objects to Judge Moreno's alternative finding that the Leon good faith exception applies even if the initial warrant somehow was not supported by probable cause. Doc. 74 at 5–6. When a warrant is not supported by probable cause, courts must consider whether the Leon good faith exception applies. "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citing United States v. Leon, 468 U.S.

897, 922 (1984)). However, the exception does not apply when the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 922 (quoting Brown v. Illinois, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)); see also United States v. Dickerman, 954 F.3d 1060, 1065 (8th Cir. 2020) ("The good-faith inquiry is confined to the objectively ascertainable question [of] whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization."). In determining whether it was objectively reasonable for the officer to rely on the validity of the warrant, courts "can look outside the four corners of the affidavit and consider the totality of circumstances, including what the officer knew but did not include in the affidavit." Dickerman, 954 F.3d at 1065 (quoting United States v. Farlee, 757 F.3d 810, 819 (8th Cir. 2014)).

Metcalf, assuming that the warrant was not supported by probable cause, argues that the Leon good faith exception does not apply. However, this Court has concluded that the warrant was supported by probable cause. In any event, given the discussion above, this Court agrees with Judge Moreno that it was objectively reasonable for Special Agent Estes to have relied in good faith on the tribal judge's determination that there was probable cause to issue the warrant.

### C. Fruit of the Poisonous Tree

Finally, Metcalf objects to Judge Moreno's finding that the second federal search warrant was not fruit of the poisonous tree. This Court has already determined that the initial tribal search warrant, and the search and seizure of evidence conducted in accordance with it, did not violate the Fourth Amendment. As Judge Moreno phrased it, "there was no 'poisonous tree' for any 'tainted fruit' to grow or fall from." Doc. 70 at 17; see also United States v. Brown, No. CR 12–30115–RAL, 2013 WL 943619, at *9–10 (D.S.D. Mar. 11, 2013) (finding that the defendant's

"fruit of the poisonous tree" argument failed because the initial search warrant was supported by probable cause). Therefore, the data obtained from the cellphones need not be suppressed.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Metcalf's Objection to the Report and Recommendation, Doc. 74, is overruled. It is further

ORDERED that the Report and Recommendation For Disposition of Motion to Suppress Statements, Doc. 70, is adopted. It is further

ORDERED that Metcalf's Motion to Suppress, Doc. 54, is denied.

DATED this 4th day of February, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE